**Case No. 25-1770**

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**POPPLETON NOW COMMUNITY ASSOCIATION, INC, *et al.***
***Plaintiffs-Appellants*,**

v.

**LA CITÉ DEVELOPMENT, LLC, *et al.***
***Defendants-Appellees*.**

On Appeal from the United States District Court
for the District of Maryland
Civil Action No. 1:24-cv-02420-ABA

**RESPONSE BRIEF OF
APPELLEES LA CITÉ DEVELOPMENT, LLC, LA CITÉ, LLC, PSH 1B,
LLC, POPPLETON DEVELOPMENT I, LLC, DAN BYTHEWOOD, JR.,
THE MAYOR AND CITY COUNCIL OF BALTIMORE, ALICE KENNEDY,
AND BRANDON SCOTT**

Anthony J. Phillips
Thomas L. Howard III
Jake B. Mitchell
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
tony.phillips@pillsburylaw.com
thomas.howard@pillsburylaw.com
jake.mitchell@pillsburylaw.com

*Counsel for Developer Defendants*

Thomas Webb
Hanna Marie C. Sheehan
BALTIMORE CITY LAW DEPARTMENT
100 Holliday St.
Baltimore, MD 21202
Tom.Webb@baltimorecity.gov
Hanna.Sheehan@baltimorecity.gov

*Counsel for Baltimore Defendants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1770__    Caption: Poppleton Now Community Association, Inc., et al. v. La Cite, LLC, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

La Cite, LLC, La Cite Development, LLC, PSH 1B, LLC, Poppleton Development I, LLC, and
(name of party/amicus)

Dan Bythewood, Jr.

who is _____Appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jake B. Mitchell                              Date:        July 24, 2025

Counsel for:  La Cite, LLC, La Cite Development, LLC, PSH 1B, LLC,
              Poppleton Development I, LLC, and Dan Bythewood, Jr.

- 2 -      [ Print to PDF for Filing ]

ii

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1770__        Caption: _Poppleton Now Community Association, Inc. v. La Cite Development_

Pursuant to FRAP 26.1 and Local Rule 26.1,

__MAYOR AND CITY COUNCIL OF BALTIMORE; BRANDON SCOTT; ALICE KENNEDY__
(name of party/amicus)

_____

 who is _____Appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☐NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Michael Redmond                Date: _____ 7/24/25 _____

Counsel for: City Appellees

- 2 -        [ Print to PDF for Filing ]

iv

## **<u>TABLE OF CONTENTS</u>**

Page

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT.........................................................................3

ISSUES PRESENTED..............................................................................................3

STATEMENT OF THE CASE.................................................................................4

I.   Factual Background.........................................................................................4

    A.   Redevelopment of the Poppleton Neighborhood .....................................4

    B.   The Plaintiffs .........................................................................................6

    C.   The Complaint .......................................................................................8

        1.   Takings Claim ...........................................................................9

        2.   Private Nuisance Claim ............................................................11

        3.   Request for Declaratory Judgment...........................................12

II.   Procedural History........................................................................................13

SUMMARY OF THE ARGUMENT.....................................................................14

STANDARD OF REVIEW....................................................................................18

ARGUMENT..........................................................................................................19

I.   Plaintiffs' Takings Claim Was Properly Dismissed. ...................................19

    A.   Plaintiffs Must Meet The Three Irreducible Minimum Requirements Of Article III Standing As To All Claims.........................19

        1.   Injury-in-fact ............................................................................21

        2.   Causation .................................................................................22

        3.   Redressability...........................................................................22

    B.   Plaintiffs Lack Standing to Bring Their Takings Claim Because None Lost or Stand to Lose Property........................................................23

    C.   Plaintiffs' Cited Authority on Standing is Wholly Inapposite. .................26

    D.   Plaintiffs Fail to State a Takings Claim Because They Do Not Allege Any Violation of a Protected Property Interest...........................29

    E.   Prudential Standing Considerations Also Dictate That the Court Should Decline to Decide the Takings Claim. ......................................32

II.     Individual Plaintiffs' Private Nuisance Claim Was Properly Dismissed.........35

     A.    Individual Plaintiffs Do Not State a Private Nuisance Claim Because the Alleged Conditions Cannot Constitute a Nuisance at Law..................................................................................................35

     B.    Individual Plaintiffs Fail to Allege Substantial or Unreasonable Interference with the Use and Enjoyment of Their Own Properties........38

     C.    Individual Plaintiffs Do Not Have Standing to Bring Their Private Nuisance Claim Because They Have Not Suffered a Concrete and Particularized Injury Caused by Defendants...........................................40

     D.    If This Court Does Not Affirm Dismissal of the Private Nuisance Claim Outright, It Should Nonetheless Affirm Dismissal Under Abstention Principles Because No Other Claims Give Subject Matter Jurisdiction to the Federal Courts. ..............................................42

III.    Plaintiffs' Request for Declaratory Judgment was Properly Dismissed Because There Is No Independent Jurisdictional Basis for the Court to Provide the Requested Relief........................................................................43

CONCLUSION ...................................................................................................47

**TABLE OF AUTHORITIES**

Page(s)

Cases

*A Soc'y Without a Name v. Virginia*,
655 F.3d 342 (4th Cir. 2011)..................................................................18

*Aetna Life Ins. v. Haworth*,
300 U.S. 227 (1937)...............................................................................45

*Ali v. Hogan*,
26 F.4th 587 (4th Cir. 2022)..................................................................20

*Allen v. Wright*,
468 U.S. 737 (1984)..........................................................................22, 44

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003)..................................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................18

*Ass'n of Am. Railroads v. Hudson*,
144 F.4th 582 (4th Cir. 2025)................................................................18

*Ass'n of Data Processing Serv. Orgs. v. Camp*,
397 U.S. 150 (1970)...............................................................................27

*Barrett v. Pae Gov't Servs., Inc.*,
975 F.3d 416 (4th Cir. 2020)..................................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................18

*Berman v. Parker*,
348 U.S. 26 (1954).................................................................................33

*Bishop Processing Co. v. Davis*,
132 A.2d 445 (Md. 1957)........................................................................36

*CGM, LLC v. BellSouth Telecomms., Inc.*,
664 F.3d 46 (4th Cir. 2011)...............................................................44, 45

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................22

*Clayland Farm Enterprises, LLC v. Talbot Cnty.*,
    987 F.3d 346 (4th Cir. 2021)...................................................30

*Cohen v. Rosenstein*,
    804 F. App'x 194 (4th Cir. 2020)...........................................44

*Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*,
    816 F.3d 48 (4th Cir. 2016)....................................................45

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).................................................................21

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013)..................................................20

*Deal v. Mercer Cnty. Bd. of Educ.*,
    911 F.3d 183 (4th Cir. 2018)..................................................18

*Disability Rights of South Carolina v. McMaster*,
    24 F. Supp. 4th 893, 903 (4th Cir. 2022)...........................22, 26

*Doriety v. Sletten*,
    109 F.4th 670 (4th Cir. 2024).................................................18

*United States v. Dow*,
    357 U.S. 17 (1958)...................................................................24

*Echard v. Kraft*,
    159 Md. App. 110 (2004).........................................................39

*Evans v. B.F. Perkins Co.*,
    166 F.3d 642 (4th Cir. 1999)..................................................20

*Exxon Corp. v. Yarema*,
    516 A.2d 990 (Md. 1986).........................................................35

*Exxon Mobil Corp. v. Albright*,
    433 Md. App. 303 (2013)....................................................37, 39

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)......................................................... 20, 21, 22, 30

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
  204 F.3d 149 (4th Cir. 2000)......................................................23, 28

*Gallagher v. H.V. Pierhomes, LLC*,
  957 A.2d 628 (Md. Ct. Spec. App. 2008)......................................35

*Gem Cnty. Mosquito Abatement Dist. v. EPA*,
  398 F. Supp. 2d 1 (D.D.C. 2005) ..............................................44

*Goldstein v. Chestnut Ridge Vol. Fire Co.*,
  218 F.3d 337 (4th Cir. 2000)...................................................31

*Hafen v. United States*,
  47 F.3d 1183 (Fed. Cir. 1995)...................................................24

*Henderson v. Wal-Mart Stores, Inc.*,
  2023 WL 166411 (4th Cir. Jan. 12, 2023).................................45

*Hillard v. Kaiser Found. Health Plan of the Mid-Atlantic States*,
  169 F. Supp. 2d 416 (D. Md. 2001)...........................................42

*Johnson v. Prince George's County Board of Elections*,
  2018 WL 1069434 (D. Md. Feb. 27, 2018) ........................ 44, 45, 46

*Kelo v. City of New London*,
  545 U.S. 469 (2005)...................................................................33

*Kerr v. Marshall Univ. Bd. of Governors*,
  824 F.3d 62 (4th Cir. 2016)......................................................29

*Knick v. Twp. of Scott*,
  588 U.S. 180 (2019)..............................................................23, 29

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004)...................................................................24

*Langford v. Joyner*,
  62 F.4th 122 (4th Cir. 2023)................................................. 19, 26

ix

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..................................................................15, 19, 20

*McCaw v. Harrison*,
  259 S.W.2d 457 (Ky. 1953) ...............................................................37

*MediGrow, LLC v. Natalie M. LaPrade Medical Cannabis Comm'n*,
  487 F. Supp. 3d 364 (D. Md. 2020)................................... 42, 43, 46, 47

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
  571 U.S. 191 (2014)..........................................................................44

*Miller v. Montgomery Cnty.*,
  2010 WL 3894500 (D. Md. Sept. 29, 2010), *aff'd*, 458 F. App'x 304 (4th
  Cir. 2011)..........................................................................................24

*Nat'l Fair Hous. All. v. Bank of Am.*,
  401 F. Supp. 3d 619 (D. Md. 2019)....................................................38

*Neifert v. Dep't of Env't*,
  910 A.2d 1100 (Md. 2006)..................................................................29

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992)...............................................................................32

*Opiotennione v. Bozzuto Mgmt. Co.*,
  130 F.4th 149 (4th Cir. 2025)............................................................40

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007) (Kavanaugh, J.)........................... 17, 40

*Pulte Home Corp. v. Montgomery Cnty.*,
  271 F. Supp. 3d 762 (D. Md. 2017), *aff'd*, 909 F.3d 685 (4th Cir. 2018) .........30

*Sierra Club v. Morton*,
  405 U.S. 727 (1972)......................................................................27, 28

*Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at
  Broadlands, LLC*,
  713 F.3d 175 (4th Cir. 2013)..............................................................19

*Stottlemeyer v. Crampton*,
  200 A.2d 644 (Md. 1964)....................................................................36

x

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023)..................................................................................20

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009).............................................................................22, 23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................................................................................14

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018)..............................................................................40

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
386 F.3d 581 (4th Cir. 2004).....................................................................46

*Walker v. City of Salisbury*,
170 F. Supp. 2d 541 (D. Md. 2001).....................................................42, 43

*Warth v. Seldin*,
422 U.S. 490 (1975)..................................................................................28

*Wells v. Johnson*,
2025 WL 2315981 (4th Cir. Aug. 12, 2025)..........................................44, 45

*Wietzke v. Chesapeake Conference Ass'n*,
26 A.3d 931 (Md. 2011).............................................................................35

*U.S. v. Windsor*,
570 U.S. 744 (2013)..................................................................................32

## Constitutions

Maryland Constitution ...........................................................................6, 9, 24

U.S. Constitution ..........................................................................................6, 9

U.S. Constitution
Fifth Amendment, Takings Clause..............................................................3, 9
Eleventh Amendment.................................................................................46
Article III.............................................................................................19, 32
Article III, Section 2 ..................................................................................19
Due Process Clause......................................................................................9
Equal Protection Clause...............................................................................9

## Statutes and Codes

United States Code
    Title 5, Section 702.................................................................................27
    Title 28, Section 1291 ...............................................................................3
    Title 28, Section 1331 ...............................................................................3
    Title 28, Section 1367(a).............................................................................3
    Title 28, Section 1367(c)(3) ......................................................................42
    Title 28, Section 2201 ...................................................................... 13, 44, 46
    Title 33, Section 1251, et seq. .................................................................27
    Title 33, Section 1365(g) .........................................................................27
    Title 42, Section 1981 ..............................................................................46
    Title 42, Section 1983 ...................................................................... *passim*

## Rules and Regulations

Federal Rules of Civil Procedure
    Rule 12(b)(1) ..................................................................................... 13, 19
    Rule 12(b)(6) ..................................................................................... 13, 18
    Rule 57 ...............................................................................................13

**<u>INTRODUCTION</u>**

This case, at its core, involves a politically and ideologically based challenge to lawful local government decisions brought by individuals who did not suffer any concrete or particularized injury. Plaintiffs-Appellants ("Plaintiffs") are bystanders whose complaint was properly dismissed because they lack standing to bring their takings and private nuisance claims, claims which in any event fail to state a cause of action upon which relief can be granted. Without an independent basis for jurisdiction (*i.e.*, because there remains no federal question or claim of diversity), the district court cannot grant the declaratory relief that Plaintiffs seek. Plaintiffs can raise their generalized grievances through administrative and legislative processes, but not through the federal courts.

More than fifty years ago, the City of Baltimore envisioned revitalizing the blighted Poppleton neighborhood, designating a 13.8-acre area (the "Project Area") for urban redevelopment through the use of eminent domain. In 2006, the City entered a Land Disposition and Development Agreement (the "LDDA") with Developer Defendants (defined below) to govern the redevelopment and began the process of condemning properties. Redevelopment of the Project Area was slow to commence and has overcome many hurdles, but is now ongoing.

Plaintiffs are three couples who live near (but not within) the area designated for eminent domain, and a nonprofit association (apparently controlled by these

1

couples) that claims to represent neighborhood interests. In this lawsuit, Plaintiffs attempted to invalidate the LDDA as an unconstitutional taking and to raise other constitutional and tort claims. Plaintiffs claim their alleged "injuries" are the result of the award of development rights under the LDDA to a purportedly "politically-favored Developer," which, according to Plaintiffs, "unlawfully restricted any free market development for nearly twenty years and forced eminent domain … without the required corresponding performance of a public benefit." JA015. Naturally, Defendants disagree.

As relevant on appeal, the district court properly dismissed Plaintiffs' takings claim because none own property seized in eminent domain, and Poppleton Now failed to identify a single member who suffered a taking. So, Plaintiffs alleged no concrete, particularized injury from government action.

The private nuisance claim similarly fails because Individual Plaintiffs' (defined below) allegations of nearby vacant homes, weeds, trash, and burdensome parking are not the kind of substantial and unreasonable interference with the use and enjoyment of their own properties the law recognizes as a private nuisance. As with the takings claim, these allegations fall short of the concrete, particularized injury necessary to establish standing for a private nuisance claim.

Finally, Plaintiffs' request for declaratory judgment was properly dismissed because the Declaratory Judgment Act is remedial, not a freestanding cause of action:

2

Once Plaintiffs' federal claims failed, there was no "actual controversy" or other independent basis for federal court jurisdiction as required to enter declaratory judgment.

This Court should affirm the district court's dismissal of Plaintiffs' claims and the Complaint.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this civil action under 28 U.S.C. §§ 1331 and 1367(a). Plaintiffs brought constitutional claims pursuant to 42 U.S.C. § 1983 and state law claims that arose from a common nucleus of operative facts. A final judgment was entered in this case on June 17, 2025. A timely notice of appeal was filed on July 7, 2025. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Did the district court correctly hold that Plaintiffs—none of whom own property that was taken—lack standing to bring a claim under the Takings Clause of the Fifth Amendment?

2.      Did the district court correctly hold that Individual Plaintiffs' allegations regarding their embarrassment about neighborhood conditions and parking concerns did not constitute the type of substantial and unreasonable

3

interference with the use and enjoyment of property required to state a claim for private nuisance?

3.      Alternatively, if dismissal of Plaintiffs' federal takings claim is affirmed but their state law private nuisance claim survives, should the Court nevertheless decline to exercise its discretion to retain supplemental jurisdiction over the private nuisance claim and instead dismiss the Complaint?

4.      Did the district court correctly dismiss Plaintiffs' request for declaratory judgment after dismissing Plaintiffs' underlying claims, given that the federal Declaratory Judgment Act's limited procedural remedy can be invoked only if, *inter alia*, there exists an independent basis for jurisdiction?

## STATEMENT OF THE CASE

### I.      Factual Background

#### A.      Redevelopment of the Poppleton Neighborhood

In 1975, the Baltimore City Council adopted an Urban Renewal Plan ("URP") that designated Poppleton, a historically blighted neighborhood that struggled with crime and a lack of economic stability, as a target for future redevelopment. JA033. In 2006, the City of Baltimore awarded development rights in the Poppleton neighborhood to Developer Defendants pursuant to a Land Disposition and Development Agreement—the LDDA. JA020, JA035. The LDDA called for the phased redevelopment of 13.8 acres—the "Project Area"—under the URP, including development of residential, commercial, retail, greenspace, and infrastructure

4

elements, all for the benefit of the neighborhood and community (the "Project"). JA020, JA036. Construction on Phase 1A of the Project began in 2018 and was completed in 2020 (JA316), including two class-A apartment buildings, a pocket park across from the historic former home of Edgar Allan Poe, and a dog park open to the community.

The LDDA empowers the City to acquire property as needed to effectuate the Project, including through eminent domain (JA108-110) and obligates Developer Defendants to complete the Project's phases after the City acquires and transfers title to the properties subject to each phase. JA117. Between 2013 and 2022, the LDDA was amended five times to account for various delays in the development process and adjustments in scope. JA180, JA236, JA246, JA259, JA270.

One of the Plaintiffs (Sonia Eaddy) challenged the condemnation of two of her properties in state court and lost. In a showing of good faith, and without any obligation to do so, Developer Defendants voluntarily agreed to give up their right to develop Ms. Eaddy's properties. The City and Developer Defendants agreed in the Fifth Amendment to the LDDA to consideration of $260,000 in exchange for giving up development rights and to cover Developer Defendants' pre-construction costs related to the removed properties, and the Eaddys kept their properties. JA023-024, JA044, JA271. Separately, Developer Defendants received $550,000 from the Housing Authority of Baltimore City ("HABC") in consideration for costs and

5

development rights necessary for HABC's Poe Redevelopment Project adjacent to the site. JA024, JA044, JA273. None of the Plaintiffs contributed funding or were otherwise involved in these contractual exchanges.

Since completing Phase 1A, Developer Defendants have completed design development and secured the necessary approvals from the City for Phase 1B construction to begin. Developer Defendants have also partnered with NVR, Inc. (formerly known as Ryan Homes) to construct townhomes and multifamily housing in Phases 2 and 3 (JA 316-317) and are working through the City's approval processes.

### B.    The Plaintiffs

Plaintiffs Curtis and Sonia Eaddy own property that was initially within the Project Area but removed from eminent domain proceedings by the City in 2022 after executing the Fifth Amendment to the LDDA with Developer Defendants. JA027-028, JA271. The Eaddys "expressly do not claim any damages as a result of her home having been listed by the city for eminent domain, then removed by the City, and they limit their claims to the Unconstitutionality of the Poppleton LDDA, the state of the neighborhood and the attendant impact of these issues on their present market value[,] and loss of use and enjoyment of their home."[1] JA028. Ms. Eaddy is

---

[1] The Complaint uses the defined term "Unconstitutional," to refer to both the United States Constitution and the Maryland Constitution. JA015.

6

the current president of the organizational plaintiff, Poppleton Now, and a Baltimore homeowner and taxpayer. JA027.

Plaintiffs Sterling and Francina Walker are members of Poppleton Now, and Ms. Walker serves as a Poppleton Now board member. JA028. The Walkers' home "is surrounded by, but not in, the [Project] Area." JA028.

Plaintiffs Yvonne and Skipp Gunn live adjacent to, but not within, the Project Area. JA028. Ms. Gunn is a Poppleton Now board member. JA028.

Collectively, the Eaddys, the Walkers, and the Gunns are referred to as "Individual Plaintiffs."

Plaintiff Poppleton Now is a non-profit corporation whose alleged purpose is "bettering the Poppleton neighborhood and advocating for the rights and desired uses of current and former neighbors, especially those who have been displaced and had their homes taken by the acts of Defendants." JA027. The Complaint alleges no facts about specific members of Poppleton Now beyond introducing Individual Plaintiffs. JA027-028. There is no allegation in the Complaint that Poppleton Now owns any property, let alone had property taken as part of the Project, or that any member of Poppleton Now currently lives within the Project Area.[2]

---

[2] In their opening brief, Plaintiffs for the first time assert that "[t]he Poppleton Now Community Association … consists … of members who lost their homes" (Opening Br. at 7), but this allegation appears nowhere in their complaint. *See* JA027.

7

### C.    The Complaint

Plaintiffs filed suit against Defendants La Cité Development, LLC, La Cité, LLC, PSH 1B, LLC, Poppleton Development I, LLC ("PDI"), and Dan Bythewood, Jr. (collectively, "Developer Defendants"); The Mayor and City Council of Baltimore; Brandon Scott, in his individual capacity and official capacity as Mayor of Baltimore; and Alice Kennedy, in her individual capacity and official capacity as director of the Department of Housing and Community Development ("DHCD") (collectively, "Baltimore Defendants").[3] JA015.

Broadly, Plaintiffs challenge the LDDA as an unconstitutional taking, arguing that, under that agreement, the City forced the condemnation of homes and gave development rights for the Project Area to Developer Defendants without requiring the performance of a public benefit. *See* JA015-016. According to Plaintiffs, the LDDA has restricted free market development in the Poppleton neighborhood and created undesirable conditions. JA016. For relief, Plaintiffs seek a declaratory judgment that, *inter alia,* the LDDA is invalid and that "the City [should] be forced

---

[3] On appeal, Plaintiffs have abandoned claims against previously named defendants HABC; Janet Abrahams, in her individual capacity and official capacity as President and Chief Executive Officer of HABC; and Sheila Dixon, Baltimore City Council President from 1999 to 2007, in her individual capacity. *See* Opening Br. at 8.

8

[to] restore at least the value taken from Poppleton through eminent domain." JA016, JA073. They also seek equitable and injunctive relief. JA016, JA074.

The Complaint asserted six counts: (1) a violation of the Takings Clauses of the U.S. Constitution and the Maryland Constitution; (2) a violation of the Equal Protection and Due Process Clauses of the U.S. Constitution and the Maryland Constitution; (3) a violation of the Equal Protection and Due Process Clauses of the U.S. Constitution and the Maryland Constitution (made on different grounds than the second claim and asserted only against the City of Baltimore); (4) private nuisance; (5) unjust enrichment; and (6) declaratory judgment. JA048, JA051, JA054, JA066-068. Plaintiffs have abandoned their equal protection, due process, and unjust enrichment claims on appeal. *See* Opening Br. at 8. Only the takings and private nuisance claims and the request for declaratory judgment remain.

### 1.    Takings Claim

Plaintiffs' takings claim is based on two premises: (1) the City's taking of Poppleton properties under the URP were not for public use; and (2) the takings were effectuated pursuant to an unlawful URP process. *See* JA049-050.

Critically, Plaintiffs do not allege that any of *their* property was taken—unconstitutionally or otherwise—which they conceded at oral argument. *See* JA341. Instead, Plaintiffs baselessly assert that Defendants "conspired impermissibly" and that Developer Defendants "acted under color of law" to deprive Plaintiffs of their

9

constitutional rights. *See* JA048-051. The Complaint alleges that Defendants circumvented eminent domain procedures (*see* JA049-050), and that "Defendants took homes from private persons for the benefit of this Developer." JA049.

Plaintiffs speculate that Developer Defendants arranged for former City Council President Sheila Dixon to have a full day of makeovers and a feature in *Essence* Magazine, implying that Developer Defendants improperly orchestrated a favorable award of the LDDA. *See* JA019-020. But the Complaint fails to allege any actions taken by Ms. Dixon, or any other city official at Ms. Dixon's behest, to award the LDDA improperly to Developer Defendants.[4] The Complaint also fails to offer any specific facts alleging that Developer Defendants played any role in eminent domain proceedings for property condemned by the City as part of the Project, or supporting Plaintiffs' plainly legal conclusion that Developer Defendants "acted under color of law."

---

[4] Indeed, Exhibit C to the Complaint—the DHCD memorandum published by former Director of Asset Management and Disposition at DHCD, Robert Pipik—contradicts Plaintiffs' implication. Mr. Pipik's memorandum provides DHCD's bases for recommending award of the LDDA to Developer Defendants, including "the strength of [Developer Defendant's] development vision, financial resources, and community partnerships." JA101. At the time his department awarded the LDDA to Developer Defendants, Mr. Pipik worked for the Martin O'Malley administration, not for Ms. Dixon or the Baltimore City Council on which she served. *See* JA101.

10

Plaintiffs also contend that the LDDA is unconstitutional because it grants Developer Defendants a perpetual development right over the entire Project Area without a corresponding obligation to perform. JA021-022.

The Eaddys claim that eminent domain proceedings rendered Ms. Eaddy's home non-transferrable and non-bankable, and worthless to any interested person or investor. JA039. However, there are no allegations that the Eaddys tried to sell or mortgage their home. Notably, "[t]he Eaddys expressly do not claim any damages as a result of her home having been listed by the city for eminent domain, then removed by the city…." JA028.

### 2. *Private Nuisance Claim*

Individual Plaintiffs' private nuisance claim arises from alleged impacts to property purportedly caused by the Project. They allege, in conclusory fashion, that the Eaddys, Walkers, and Gunns—all owners of property *outside* the Project Area—lost use and enjoyment of their land because of the Project, and that condemnation of *other people's properties* (to allow for redevelopment of the blighted Poppleton neighborhood) has caused the value of their homes to decrease. *See* JA025, JA039-043, JA067. The Gunns allege that they have "endured tall grass and weeds, and became embarrassed when family would come visit." JA041. The Walkers allege that they must endure neighboring apartment residents parking on their street, which they allege is "burdening the community." JA043. More broadly, the Complaint

11

alleges that the Poppleton neighborhood "is now an almost entirely abandoned and blighted ghost-town." JA066.

But the Complaint contains no allegations establishing that the current condition of the Poppleton neighborhood today is different (let alone worse) than the conditions found by the City's elected leaders when they created the Poppleton URP in 1975 and committed the City's resources to redeveloping the already blighted neighborhood. There are no allegations in the Complaint that describe specific actions taken by Defendants that purportedly created the private nuisances from which Individual Plaintiffs claim to be suffering.

In addition, Individual Plaintiffs allege that the Gunns' home was assessed at $50,000 despite "meticulous care and renovations." JA041. However, there are no allegations that any of Individual Plaintiffs lost market value (from some speculative starting point) because of Defendants' actions or inactions as opposed to other conditions in the market or the blighted history of the neighborhood.

### 3.      *Request for Declaratory Judgment*

Drawing on their takings claim, and their now-abandoned due process, equal protection, and unjust enrichment claims, Plaintiffs requested declaratory relief from the district court as follows:

    i.    To declare that the Poppleton LDDA is void *ab initio* or, alternatively, as of either the First Amendment or the day the complaint was filed;

ii. To declare the City's transfer of $260,000 and the HABC's transfer of $550,000 to the Developer unconstitutional, unlawful, ultra vires, or reflect unjust enrichment;

iii. To declare that HABC is a separate corporate entity and/or that the acts of its CEO to authorize payment of $550,000 to Developer was *ultra vires*;

iv. To declare that certain City land use practices are unconstitutional, illegal, prone to abuse, and must be abolished; and

v. To declare that at least the entire value taken from Poppleton be held in trust for the exclusive use in Poppleton.

*See* JA016, JA068-073. Plaintiffs claim they are entitled to declaratory relief pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201 (the federal Declaratory Judgment Act), and Rule 57 of the Federal Rules of Civil Procedure. JA069. Tellingly, Plaintiffs describe declaratory judgment as "the relief" they seek throughout the Complaint. JA051, JA053, JA065, JA067-069.

## II.    Procedural History

Defendants separately moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs lacked standing to assert their claims and had failed to state any claim upon which relief could be granted. The district court heard argument on the motions to dismiss and thereafter issued a 34-page Memorandum Opinion concluding that "some counts fail for lack of standing, some fail for a failure to state a claim, and some fail for both reasons." JA407. Accordingly, the district court dismissed the Complaint in its

13

entirety. JA432. Plaintiffs here seek reversal of the district court's dismissal or, in the alternative, leave to amend the Complaint. Opening Br. at 34.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed all of Plaintiffs' claims, and this Court should not revive any of those claims on appeal. As an initial matter, Plaintiffs lack Article III standing because they cannot show any concrete and particularized injury caused by Defendants that is redressable by a favorable court decision on either of their remaining two claims for takings or private nuisance. Plaintiffs' suit is a political and ideological opposition by three married couples to a public redevelopment initiative that has progressed slowly but through lawful means. That they disagree with or simply dislike the Project is no basis to invoke federal court jurisdiction. Plaintiffs' generalized grievances about their local government's decisions should be raised through administrative or legislative processes, not the federal court system.

As a matter of constitutional law, every "plaintiff must demonstrate standing separately for each form of relief sought." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (internal quotations omitted). As the Supreme Court has repeatedly confirmed, the "irreducible constitutional minimum of standing contains three elements:" First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual

14

or imminent, not 'conjectural' or 'hypothetical'"; second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court;" and third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Like their Complaint, Plaintiffs' opening brief eschews any meaningful attempt to meet the irreducible minimum requirements of Article III standing, relying instead on a raft of inapposite cases that offer no help.

Because Plaintiffs lack Article III standing for either of their claims that remain on appeal, this Court lacks jurisdiction and must dismiss:

No injury in fact. Plaintiffs fail to establish that they have suffered any injury in fact. Plaintiffs do not allege their own properties were taken through eminent domain, nor do they claim deprivation of all economically beneficial interest in their properties. Their takings claim arises instead from the exercise of eminent domain by the City over properties belonging to non-parties, all of whom received just compensation in return. The taking of property belonging to *others* is not a concrete and particularized injury suffered by *these* Plaintiffs.

Similarly, although private nuisance requires a substantial or unreasonable interference with the use and enjoyment of one's property, Individual Plaintiffs'

15

private nuisance claim is bereft of allegations of the type of conditions that the law recognizes can cause a private nuisance. Consequently, Individual Plaintiffs have not (and cannot) alleged the concrete and particularized injury required to satisfy Article III's injury-in-fact requirement for their private nuisance claim, either.

Inadequate allegations of causation. Plaintiffs also fail to adequately allege that the injuries about which they do complain were actually caused by Defendants' actions. For example, Plaintiffs have not alleged (and cannot allege) how Developer Defendants caused the complained-of "takings," or how Defendants caused the conditions Plaintiffs claim amount to a nuisance.

Not redressable. Finally, the relief Plaintiffs request—invalidation of the LDDA—would have no meaningful impact on the interference they claim constitutes a nuisance, let alone redress their claimed injuries.

Even if Plaintiffs did have standing to pursue their takings or private nuisance claims, they failed to state any claim upon which relief can be granted for either count. The takings claim fails because Plaintiffs do not allege a protected legal interest in their property that has been taken or is subject to future taking. Instead, the claim fundamentally arises from the takings of *other people's properties*, which is insufficient. Plaintiffs' private nuisance claim also fails because, even if accepted as true, the alleged interferences are not among the categories of harm recognized by the law as a *private* nuisance. Private nuisance law protects property owners from

16

tangible intrusion—sights, sounds, odors, etc.—that rises to the level of substantial and unreasonable interference with the use and enjoyment of *their own property*. Unsightly or burdensome conditions on other people's property is not the type of interference the law recognizes as a private nuisance.

Moreover, even if the conditions complained of by Individual Plaintiffs could possibly constitute a *private* nuisance, Individual Plaintiffs fail to allege deprivation of even one specific use or legally protectable enjoyment of *their* property caused by the purported nuisance conditions, let alone facts sufficient to plead substantial or unreasonable interference as the law requires.[5]

In the absence of any surviving claim arising from federal law, Plaintiffs' request for declaratory judgment—a form of remedy rather than itself a substantive claim—necessarily fails. Even if Individual Plaintiffs' private nuisance claim somehow survives, in the absence of the takings claim (*i.e.*, a claim raising a federal question), there is no independent jurisdictional basis for the federal courts to decide Plaintiffs' request for a declaratory judgment. Therefore, the count seeking declaratory relief in the Complaint was properly dismissed.

---

[5] The appropriate way to raise concerns about *public* nuisances like tall grass, weeds, rodents, or parking violation in the City of Baltimore is through the City's municipal website, which Plaintiffs do note allege they have done so.

17

Plaintiffs' appeal rests on baseless claims and advances bootless arguments. This Court should affirm the district court's judgment dismissing the Complaint.

## STANDARD OF REVIEW

A district court's dismissal for lack of Article III standing is reviewed de novo. *Ass'n of Am. Railroads v. Hudson*, 144 F.4th 582, 589 (4th Cir. 2025). When, as here, standing is challenged on the pleadings, the court "accept[s] as true all material allegations of the complaint and construe[s] the complaint in favor of the complaining party." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (citation omitted).

Likewise, a district court's dismissal for failure to state a claim is reviewed de novo. *Doriety v. Sletten*, 109 F.4th 670, 678 (4th Cir. 2024). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6).

Further, Courts evaluate whether a complaint can survive a Rule 12(b)(6) motion to dismiss "by separating the legal conclusions from the factual allegations, assuming the truth of *only* the factual allegations, and then determining whether those allegations allow the court to reasonably infer that the plaintiff is entitled to the legal remedy sought." *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346

18

(4th Cir. 2011) (citations omitted) (emphasis added); *see also Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) (the court need not accept "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," or "conclusory statements.").

## ARGUMENT

### I.     Plaintiffs' Takings Claim Was Properly Dismissed.

The district court dismissed Plaintiffs' takings claim for lack of standing because none had their own property taken. On appeal, Plaintiffs nevertheless argue for standing based on precedents that arise in other, disparate contexts and that do not support the extension of standing to residential neighbors who lost no property of their own. This Court should decline to extend standing beyond its fixed constitutional limits and affirm the district court's holding.

### A.     Plaintiffs Must Meet The Three Irreducible Minimum Requirements Of Article III Standing As To All Claims.

Article III of the U.S. Constitution limits jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. If a plaintiff fails to meet the required threshold for Article III standing, federal courts lack power to adjudicate and dispose of a claim on the merits, and dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is required. *See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at*

19

*Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013); *see also Ali v. Hogan*, 26 F.4th 587, 600 (4th Cir. 2022).

As noted above, to satisfy Article III standing requirements, a plaintiff must show (1) an injury-in-fact; (2) causation (*i.e.*, that the injury is fairly traceable to the defendant's conduct; and (3) redressability (*i.e.*, that the injury is not merely speculatively but likely to be redressed by the relief plaintiff seeks in bringing suit). *See Lujan*, 504 U.S. at 560-61. The "plaintiff bears the burden of establishing the three irreducible minimum requirements of Article III standing." *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (burden belongs to plaintiff).

An organizational plaintiff—such as Poppleton Now—can establish associational standing only if it demonstrates "that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (internal quotations omitted). "[A]n organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." *Food & Drug Admin. v. All. for*

20

*Hippocratic Med.*, 602 U.S. 367, 394 (2024) (citations omitted). Nor can an organization "manufacture its own standing" by "expending money to gather information and advocate against the defendant's action" in the absence of "a concrete injury caused by a defendant's actions." *Id.*

### 1.    *Injury-in-fact*

To satisfy the injury-in-fact element of standing, a plaintiff must demonstrate an invasion of a legally protected interest that is concrete and particularized and actual or imminent, rather than conjectural or hypothetical. *Id.* at 381. That threshold requirement is designed to prevent a disaffected bystander from using federal courts to air grievances that should be resolved through the legislative process.[6] "Article III standing screens out plaintiffs who might have only a general, legal, moral, ideological, or policy objection to a particular government action." *Id*. As the Supreme Court observed: "Article III does not contemplate a system where 330 million citizens can come to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law. Vindicating the public interest is a function of Congress and the Chief Executive." *Id*. at 382.

---

[6] Although they make no argument in support of this theory, Plaintiffs' allegation in the Complaint that they are taxpayers changes nothing. Taxpayers, too, "must be able to show … some direct injury … and not merely that he suffers in some indefinite way in common with people generally." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006).

Nor is it enough that a procedural right may have been infringed. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (inability to comment on proposed regulation before enactment was not sufficient to establish injury-in-fact in the absence of legally protected interest in the land affected by the regulation).

### 2.    *Causation*

To satisfy the second element of standing, causation, the plaintiff must establish each of the "links in the chain of causation," which "must not be too speculative or attenuated." *Food & Drug Admin.*, 602 U.S. at 383 (*citing Allen v. Wright*, 468 U.S. 737, 759 (1984)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013). To meet this standard, "the plaintiff must show a predictable chain of events leading from the [defendant's] action to the asserted injury—in other words, that the [defendant's] action has caused or will cause injury-in-fact to the plaintiff." *Food & Drug Admin.*, 602 U.S. at 385.

### 3.    *Redressability*

To satisfy the third element of standing, redressability, a plaintiff bears the burden to establish that *they* would "benefit in a tangible way from the court's intervention." *Disability Rights of South Carolina v. McMaster*, 24 F. Supp. 4th 893,

22

903 (4th Cir. 2022) (citations omitted). The benefit sought from court intervention must be "likely, as opposed to merely speculative." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (citations omitted).

### B. Plaintiffs Lack Standing to Bring Their Takings Claim Because None Lost or Stand to Lose Property.

Plaintiffs cannot establish *any* of these three "irreducible minimum requirements" to establish standing for their takings claim. The district court correctly concluded that Plaintiffs lack Article III standing to pursue their takings claims, primarily because Plaintiffs did not lose their own property. "A property owner has an actionable Fifth Amendment takings claim when the government takes *his property* without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019) (emphasis added). Particularly where, as here, a plaintiff is not the "object of the government action or inaction" challenged, it is "substantially more difficult" to establish Article III standing. *Summers*, 555 U.S. at 493 (internal citations omitted).

First and foremost, Plaintiffs fail to allege a cognizable injury-in-fact. As the district court noted, "Individual Plaintiffs here all maintain ownership of their properties and, therefore, do not contend that any of their properties have been taken for public use." JA415. As the district court also held, "[t]he fact that the Individual Plaintiffs' *neighbors* had their properties taken through eminent domain does not constitute an actual injury to *Plaintiffs* that would permit these Plaintiffs to

23

challenge … those takings." JA415-416 (emphasis in original); *see also Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("A litigant generally must assert its own legal rights and interests; it cannot rest its claim to relief on the legal rights or interests of third parties."); *Hafen v. United States*, 47 F.3d 1183 (Fed. Cir. 1995) ("It is well established that a plaintiff cannot maintain a suit alleging that the Government took his property without just compensation unless he can demonstrate his undisputed ownership of the property at the time of the taking." (citing *United States v. Dow,* 357 U.S. 17, 20 (1958)).

The district court also correctly ruled that Poppleton Now lacked organizational standing because it did not allege any of its members had their property taken. *See* JA416. Although Poppleton Now allegedly advocates for the rights of past residents of Poppleton that had homes taken, the Complaint fails to identify *any* members of Poppleton Now who had their homes taken as part of the Project. *See* JA027, JA416.

These failures are fatal to Plaintiffs' takings claims under both federal and state law. *Miller v. Montgomery Cnty.*, 2010 WL 3894500, at *11 (D. Md. Sept. 29, 2010), *aff'd*, 458 F. App'x 304 (4th Cir. 2011) ("Since Plaintiff's state law cause of action alleging an unconstitutional taking under the Maryland Constitution is the state equivalent of the federal takings claim, the court will dismiss that count on the same grounds."). There is no reason to depart from the district court's correct

24

determination that the City's exercise of eminent domain to acquire other peoples' properties is not an injury to these Plaintiffs.

Second, while the lack of injury alone is sufficient to defeat standing, Plaintiffs also failed to establish causation as to either Developer Defendants or Baltimore Defendants. Aside from conclusory allegations that Developer Defendants "acted under color of law," the Complaint fails to allege *any* specific actions by Developer Defendants to effectuate the takings at issue. *See Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020). That is particularly problematic here because "[o]rdinarily, private actors are not liable under 42 U.S.C. § 1983, because the statute only provides relief for deprivations of constitutional rights by state actors." Indeed, the LDDA expressly states nothing in the agreement "shall be construed in any manner or any circumstances whatsoever as creating or establishing the relationship of co-partners, or creating or establishing the relationship of a joint venture, between the City and the Developer or as constituting the Developer as an agent or representative of the City for any purpose or in any manner whatsoever, it being understood that the Developer is an independent contractor hereunder." JA133.

Plaintiffs fail to show causation with respect to Baltimore Defendants. Plaintiffs allege an "improper" taking but make no effort to show that Baltimore Defendants did not afford due process to those whose property was condemned, to compensate those persons fairly, or even to show that such property owners were

25

displeased that Baltimore Defendants offered them a means to relocate out of Poppleton. The Court need not and should not accept Plaintiffs' conclusory allegation that the takings were "improper." *Langford*, 62 F.4th at 124.

Third, the Complaint's allegations also fail to establish that the injuries alleged by Plaintiffs are redressable by a favorable court decision. The takings at issue here did not involve property belonging to Plaintiffs, but property belonging to others who were justly compensated and who are not party to this lawsuit. Plaintiffs did not request the district court void the allegedly improper takings or return those properties to their previous owners (nor would they have any legal basis to do so). Instead, Plaintiffs requested that some speculative "value" of the properties somehow be given to "the neighborhood" at large. Granting Plaintiffs the relief they seek—invalidating the LDDA—would not redress Plaintiffs' alleged harms, it would merely prolong the redevelopment of Poppleton neighborhood to the further detriment of the community at large. Moreover, invalidating the LDDA and "restoring value" to the Project Area, which Plaintiffs are not within, would not constitute tangible relief to *these* Plaintiffs as required for Article III standing. *See Disability Rights of South Carolina*, 24 F. Supp. 4th at 93.

## C.    Plaintiffs' Cited Authority on Standing is Wholly Inapposite.

This Court should reject Plaintiffs' novel theory of "neighborhood standing" that they argue supports their takings claim. *See* Opening Br. at 13-21. The cases

26

relied on by Plaintiffs in their opening brief primarily consider claims brought pursuant to statutory or regulatory schemes that provide a path for individuals to seek judicial review of an agency or administrative decision or action. *See, e.g., Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003) (bringing suit under the Clean Water Act, 33 U.S.C. § 1251, et seq., which confers standing on any "person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g)); *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 154 (1970) (challenging agency action under 5 U.S.C. § 702). None considered standing to assert takings claims, nor stand for the novel "neighborhood standing" theory asserted by Plaintiffs here.

For example, Plaintiffs assert that in *Sierra Club v. Morton*, 405 U.S. 727 (1972), "[t]he Court ruled explicitly that standing should be allowed by anyone whose recreational use or aesthetic appreciation of the valley would be impaired by Defendants." *See* Opening Br. at 13 (citing *Sierra Club*, 405 U.S. at 738). Not only was *Sierra Club* decided in a wholly different context (specifically, a challenge to agency action brough under Section 702 of the APA), but Plaintiffs' brief misrepresents the Supreme Court's holding. In *Sierra Club*, the Supreme Court recognized:

> The trend of cases *arising under the APA and other statutes authorizing judicial review of federal agency action* has been toward recognizing that injuries other than economic harm are sufficient to bring a person within the meaning of the statutory language, and toward discarding the

27

> notion that an injury that is widely shared is ipso facto not an injury sufficient to provide the basis for judicial review. We noted this development with approval in *Data Processing*, 397 U.S., at 154, in saying that the interest alleged to have been injured may reflect aesthetic, conservational, and recreational as well as economic values. *But broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.*

*Sierra Club*, 405 U.S. at 738 (emphasis added). Indeed, *Sierra Club* held that the organization challenging the potential development at issue *lacked* standing. *See id*. at 741.

In another case cited by Plaintiffs, *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F. 3d at 156, this Court recognized "it is well established that the 'injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975). This was not only the case for the vast bulk of the standing cases relied on by Plaintiffs, but such statutory rights are clearly not present here, where Plaintiffs attempt to assert a takings claim for property that did not belong to them.[7]

None of the federal standing cases cited by Plaintiffs arise in the context of a takings claim. Plaintiffs offer no cases supporting the standing of neighbors, or of a

---

[7] Plaintiffs also offer Maryland state cases to advance its standing argument. *See* Opening Br. at 12, 21-22. The district court rejected Plaintiffs' reliance on these same cases, correctly reasoning that state law standing doctrines do not alter the irreducible minimum requirements of Article III standing in federal court. *See* JA414-415.

28

community association of *some* neighbors, to challenge the taking of other people's property through eminent domain (let alone absent allegations that the impacted property owners were denied due process or not justly compensated). [8]

### D.    Plaintiffs Fail to State a Takings Claim Because They Do Not Allege Any Violation of a Protected Property Interest.

Even if Plaintiffs did not lack standing for their takings claim (and they plainly do), this Court should nevertheless affirm the district court's order dismissing that claim because Plaintiffs have failed to adequately state a claim upon which relief can be granted. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 75 n.13 (4th Cir. 2016) ("[W]e may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court").

The Supreme Court has "long recognized that *property owners* may bring Fifth Amendment claims against the Federal Government as soon as *their property* has been taken." *Knick*, 588 U.S. at 189 (emphasis added).[9] Here, Plaintiffs do not allege any violation of a legally protected property interest, as required to support a

---

[8] At the hearing held in the district court, Plaintiffs were asked if any authority supported their takings theory. Plaintiffs identified no such authority, and instead argued their theory is circumstantially supported by analogous Fourteenth Amendment principles. *See* JA341-342. Plaintiffs also failed to identify precedent holding a private actor liable for a taking. *See* JA344. Plaintiffs' opening brief fails to present binding or persuasive authority on either principle.

[9] There is no substantive difference between Plaintiffs' federal takings claim and their Maryland takings claims. *See Neifert v. Dep't of Env't*, 910 A.2d 1100, 1119 (Md. 2006).

takings claim. Indeed, Plaintiffs admit that none of them had "their" property taken. JA341.

There are two categories of actionable takings: (1) *per se* takings, where "the government requires an owner to suffer permanent invasion of its property or completely deprives an owner of *all* economically beneficial use of its property"; and (2) regulatory takings, which do not rise to the level of a *per se* taking, but "which largely turn on the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests. *Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762, 776 (D. Md. 2017), *aff'd*, 909 F.3d 685 (4th Cir. 2018). Plaintiffs concede that they do not bring a regulatory takings claim. JA353.

All takings claims must be premised on a preexisting property right. *See Clayland Farm Enterprises, LLC v. Talbot Cnty.*, 987 F.3d 346, 354 (4th Cir. 2021). Here, Plaintiffs never allege that any of them possessed a legally protected interest in property that either has been taken or is subject to a future taking. To the contrary, the Complaint makes clear that the Eaddys' property was removed from the Project Area, and the Walkers' and Gunns' properties were never in it. JA039-042. Instead, Plaintiffs' claim is rooted in the City's use of eminent domain to acquire *others peoples'* properties—others who, notably, received just compensation as required by

30

the Constitution. Poppleton Now similarly makes no attempt to allege it owns property subject to eminent domain proceedings.

Nor do Plaintiffs allege a deprivation of an economically beneficial use or enjoyment of their property sufficient to establish a regulatory taking, let alone a *per se* taking. Only Ms. Eaddy alleges her home was rendered non-transferrable and "non-bankable," but this is pure speculation given the absence of any allegations establishing that Ms. Eaddy attempted to sell or mortgage her home. *See* JA039. Plaintiffs do not allege that they were restricted from pursuing any other property uses as a result of the taking of their neighbors' property or any other interference with their legitimate property interest.

Even if Plaintiffs could overcome these critical pleading deficiencies, the Complaint fails to state a claim against Developer Defendants specifically for an additional reason. There are no allegations to establish any actions taken by Developer Defendants to effect an improper taking. Aside from the conclusory assertion that Developer Defendants acted "under color of law"—an unsupported and inconsiderable legal conclusion—there are no allegations describing Developer Defendants' purported role in *any* eminent domain proceedings. Nor are there allegations in the Complaint sufficient to establish that Developer Defendants acted as a quasi-state actor that can be held liable under section 1983. *See Goldstein v. Chestnut Ridge Vol. Fire Co.*, 218 F.3d 337, 343 (4th Cir. 2000) (identifying only

31

four limited contexts in which "the conduct of an ostensibly private actor is under color of law for purposes of section 1983," none of which apply here).

### E. Prudential Standing Considerations Also Dictate That the Court Should Decline to Decide the Takings Claim.

Even if Plaintiffs could satisfy all three requirements for Article III standing for their takings claim (and they cannot establish any), this Court should nonetheless affirm the district court's dismissal under prudential standing principles. Even where Article III is satisfied, prudential standing reflects self-imposed limits on the exercise of jurisdiction by federal courts, which refrain from deciding broad social issues or legislative choices where plaintiffs do not seek vindication of their individual rights, want to redress merely generalized grievances, or attempt to assert a third party's legal rights absent a special relationship. *See U.S. v. Windsor*, 570 U.S. 744, 757 (2013); *see also Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). Here, Plaintiffs' takings claim runs afoul of these principles by seeking to litigate a broad social concern—the exercise of eminent domain—on behalf of third parties with whom they share no special relationship and who may or may not share Plaintiffs' views.

In the first instance, the judiciary should defer to the local legislature that selected Poppleton for urban redevelopment to address the blight identified fifty years ago when the URP was adopted. With respect to the exercise of eminent domain, in particular, the Supreme Court has cautioned against courts replacing the judgment of legislative bodies:

> It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

*Berman v. Parker*, 348 U.S. 26, 35-36 (1954). Put differently, this is a political question to be decided by elected representatives of the larger community, not the courts. Moreover, the use of eminent domain here was not to benefit Developer Defendants directly (as in *Kelo v. City of New London*, 545 U.S. 469 (2005), but to redevelop a blighted neighborhood (as in *Berman*).[10]

*Berman* clearly supports the use of eminent domain here. *See id.* (unanimously ruling that use of eminent domain to remove blight and improve the public welfare was a permissible public use). Federal courts are not called upon to question the amount and character of land to be taken once such public use is established, as the Baltimore city council did here. *See id.* This is especially true where the challenge is brought by three couples who do not stand in the shoes of and do not speak for the

---

[10] Although unnecessary for the Court to reach here, Plaintiffs' reference to and reliance on *Kelo* (*see* Opening Br. at 4-5), is both inappropriate and misleading. In *Kelo*, the City of New London used eminent domain to take private property to give to a single private actor (Pfizer) to build its own commercial plant. (Even so, the *Kelo* Court upheld "economic development" as an acceptable public use for takings purposes.) *Kelo* is easily distinguished by *Berman*, which is clearly and squarely analogous to the facts here.

33

thousands of other residents who elected the city officials now pursuing the Project for the greater community's benefit.

Second, Plaintiffs admit that their takings claim relates to other people's property, not their own. JA341. They allege no "special relationship" sufficient to pursue claims on behalf of others who had property taken. Absent such special relationship, this is merely a case of three married couples and a community organization they apparently constitute and control seeking to invalidate the planned redevelopment of a neighborhood intended to benefit thousands. Plaintiffs do not even live in the Project Area. JA039-042.

Ultimately, there is no basis to believe that Plaintiffs speak for any of their neighbors who actually had property taken, let alone for the entire Poppleton neighborhood. To the contrary, before executing the LDDA, the Department of Housing and Community Development held "[f]our large community meetings … and several smaller meetings" to gauge neighborhood sentiment and found "[t]he community is generally in support of the project." JA107. This Court should not second guess lawful decisions made by local government, especially where, as here, the decisions were made after extensive community participation and dialogue.

34

**II.    Individual Plaintiffs' Private Nuisance Claim Was Properly Dismissed.**

**A.    Individual Plaintiffs Do Not State a Private Nuisance Claim Because the Alleged Conditions Cannot Constitute a Nuisance at Law.**

This Court should affirm the district court's dismissal of the private nuisance claim because the conditions Plaintiffs allege are not of the type the law recognizes as a private nuisance. Under Maryland law, private nuisance requires "unreasonable and substantial interference" with the use and enjoyment of one's own property. *Exxon Corp. v. Yarema*, 516 A.2d 990, 1002 (Md. 1986). To sufficiently state a claim for private nuisance, "the complaint interference must cause *actual physical discomfort and annoyance* beyond those of ordinary sensibilities, tastes and habits; it must interfere seriously with the ordinary comfort and enjoyment of the property." *Wietzke v. Chesapeake Conference Ass'n*, 26 A.3d 931, 948 (Md. 2011) (citations omitted) (emphasis added). Minor interference is not enough. "[T]here must be a substantial interference with *the plaintiff's* reasonable use and enjoyment *of its property*." *Gallagher v. H.V. Pierhomes, LLC*, 957 A.2d 628, 639 (Md. Ct. Spec. App. 2008) (citations omitted) (emphasis added). "[M]ere diminution of property value, absent tortious interference with the use and enjoyment of property, is not sufficient to constitute the basis of recovery for private nuisance." *Exxon Corp.*, 516 A.2d at 1004.

35

Individual Plaintiffs' allegations that they "lost the market value and use and enjoyment of their homes"; that the neighborhood was "block[ed from] free market forces and new market entrants"; and that there exists "emptiness, vacated homes, demolished homes, rats, trash and all types of environmental nuisances" and "tall grass and weeds" are not among the categories of tangible intrusion recognized under the law as a private nuisance. *See Bishop Processing Co. v. Davis*, 132 A.2d 445, 447, 449 (Md. 1957) (odor from meat processing plant "so bad that even though the doors and windows of the homes of persons living in the neighborhood surrounding the plant are closed, it comes into the homes causing throat irritations, severe headaches, loss of appetite, nausea, regurgitation and in other ways interferes with the comfortable enjoyment of [plaintiffs'] homes" constituted a nuisance); *Stottlemeyer v. Crampton*, 200 A.2d 644, 647 (Md. 1964) (occasional damage to grass and flowers on plaintiffs' properties, brief obstruction of traffic, presence of manure on highway, and occasional tracking of manure into buildings by cattle *did not* constitute a nuisance).

The conditions alleged in Plaintiffs' Complaint do not constitute the type of interference that can form the basis of a private nuisance claim. Plaintiffs have pled only subjective complaints about development, or lack of development, near their homes. Private nuisance claims cannot be based on the "depressing influence" of nearby development, and there can be no recovery when the "claim for damages is

36

predicated upon an asserted diminution in market value resulting, not from physical injury, but from a psychological factor . . ." *Exxon Mobil Corp. v. Albright*, 433 Md. App. 303, 409 (2013) (citing *McCaw v. Harrison,* 259 S.W.2d 457, 458 (Ky. 1953)).

The district court correctly dismissed Individual Plaintiffs' private nuisance claim because their allegations, even if accepted as true, "are not comparable to the *type of interference* with the use and enjoyment of one's property that is necessary *to make out* a private nuisance claim." JA427 (emphasis added). In other words, the district court did not determine the merits of Individual Plaintiffs' nuisance claim as a matter of fact. Rather, the district court correctly evaluated the categories of interference Individual Plaintiffs alleged and found their allegations insufficient as a matter of law to state a claim. There is no reason to depart from the district court's ruling, which correctly concluded that the categories of alleged interference were not recognizable as private nuisances.

Because the neighboring properties' alleged conditions are not comparable to the type that can cause substantial and unreasonable interference with the use and enjoyment of *one's own land* as *private* nuisance requires, the district court's dismissal of this claim should be affirmed.

37

**B.** **Individual Plaintiffs Fail to Allege Substantial or Unreasonable Interference with the Use and Enjoyment of Their Own Properties.**

Furthermore, the Complaint fails to plead a single factual allegation to establish any *actual* interference with Individual Plaintiffs' use of their property, much less "substantial and unreasonable" interference. The district court noted this pleading deficiency when it dismissed the claim, highlighting two specific examples where Individual Plaintiffs' allegations fell far short of the mark: First, "Ms. Eaddy asserts that the properties bordering her home include vacated and demolished homes, but does not plausibly allege that this 'emptiness' has interfered with her own use or enjoyment of her property in any substantial way" (JA427 (internal record citation omitted)); and second, "Mr. Walker alleges that the apartment residents' use of nearby street parking 'burden[s] the community,' but does not include any facts about how his neighbors' parking decisions unreasonably interfere with the use and enjoyment of his own property." JA427.

Plaintiffs mischaracterize the district court's citation to *Nat'l Fair Hous. All. v. Bank of Am.*, 401 F. Supp. 3d 619, 644 (D. Md. 2019). Plaintiffs quote the parenthetical as if it supports their position, but they omit the very facts the district court emphasized—water flooding and animal infestations both *in the subject property*, and persistent commotion directly next door—that supported a reasonable inference of substantial and unreasonable interference in that case, unlike the facts

38

present here. *Compare* Opening Br. at 32 *with* JA428. Plaintiffs' alleged nuisances—blight, vacant lots, tall grass and weeds, rodents, and crowded street parking—are alleged to be *around* Individual Plaintiffs' properties, not even next to, let alone *on*, their properties. *See* JA039-043, JA066-067. Individual Plaintiffs allege no other facts to show substantial and unreasonable interference with their use and enjoyment of *their* properties.[11]

Individual Plaintiffs ultimately fail to plead facts sufficient to establish the fundamental elements of a private nuisance claim. A nuisance claim is not sufficiently pled where a plaintiff was "not deprived ... of the use of significant portions of their property, nor was the availability of their properties for their customary uses impaired substantially." *Albright*, 433 Md. at 411; *see also Echard v. Kraft*, 159 Md. App. 110, 122 (2004) (no private nuisance where plaintiffs experienced only psychological discomfort and were not "physically prevented" from using their property). The district court's dismissal of Plaintiffs' private nuisance claim should be affirmed.

---

[11] Plaintiffs also make no attempt to allege facts to establish what actions by Developer Defendants—who do not own the land at issue—created the alleged nuisances. To the extent Plaintiffs attempt to tie the nuisances to the Project, generally, the causal link between the two is far too attenuated, considering that blight in Poppleton was recognized fifty years ago when the City adopted the URP.

39

### C.    Individual Plaintiffs Do Not Have Standing to Bring Their Private Nuisance Claim Because They Have Not Suffered a Concrete and Particularized Injury Caused by Defendants.

Notwithstanding the district court's ruling to the contrary, Individual Plaintiffs also lack standing for their private nuisance claim. The Court has an independent obligation to assure itself of jurisdiction and therefore can affirm the dismissal of the private nuisance claim if Individual Plaintiffs lack standing to assert it. *Trump v. Hawaii*, 138 S. Ct. 2392, 2415-16 (2018). This Court may affirm the district court's dismissal of the private nuisance claim on this alternative basis.

The Complaint fails to allege any nuisances that could substantially or unreasonably interfere with the use and enjoyment of Individual Plaintiffs' *own* properties. This failure to allege injury-in-fact precludes standing for Plaintiffs' private nuisance claim.

Taking the allegations as true and most favorably to Individual Plaintiffs, the alleged injuries—decreasing property values, enduring tall grass and weeds inhabited by rodents, embarrassment during family visits, and congested parking on their streets—are neither concrete nor particularized. *See Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153-56 (4th Cir. 2025) (holding that plaintiff's alleged membership in a "disfavored" group did not constitute a particularized injury because it was not "'personal, individual, distinct, and differentiated.'" (citing *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir.

2007) (Kavanaugh, J.)). Individual Plaintiffs' feelings during family visits are speculative and not sufficiently concrete, and congested street parking "burdening the community" is not sufficiently particularized.

The complained-of conditions are also not necessarily caused by Defendants' actions (or inactions). Individual Plaintiffs ignore that broader economic factors, changes in market conditions, crime rates, inflation rates, global conflict, failed businesses, and scores of unrelated third-party decisions could have equally contributed to decreased property values, to the extent that alleged harm is assumed true. Plaintiffs' failure to allege an adequate (or indeed any) causal nexus between their alleged harms and any actions taken by Defendants is yet another reason their claim fails out of the gate for lack of standing.

Finally, Individual Plaintiffs fail to establish redressability of their private nuisance claim. Their requested relief—that the district court void the LDDA, terminating the economic redevelopment of Poppleton—would not just fail to redress the purported nuisance concerns alleged, but would in fact make them worse. Moreover, invalidating the entire LDDA bears no relationship to the nuisances alleged here. To the extent Individual Plaintiffs can establish an injury-in-fact for private nuisance that is actually caused by Defendants, the purported harms are best remedied by ordering the actual property owners to engage in regular landscaping, maintenance of the specific lots in question, and parking enforcement on the Walkers'

41

street—not invalidating the agreement underlying the redevelopment of an entire 13.8-acre neighborhood intended to benefit the entire Poppleton community.

**D. If This Court Does Not Affirm Dismissal of the Private Nuisance Claim Outright, It Should Nonetheless Affirm Dismissal Under Abstention Principles Because No Other Claims Give Subject Matter Jurisdiction to the Federal Courts.**

Should it affirm the district court's dismissal of Plaintiffs' takings claim and request for declaratory relief but not affirm the dismissal of the private nuisance claim, the Court should nonetheless dismiss Plaintiffs' private nuisance claim, too, under abstention principles. "Under 28 U.S.C. § 1367(c)(3), a federal court has the discretion to decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction." *MediGrow, LLC v. Natalie M. LaPrade Medical Cannabis Comm'n*, 487 F. Supp. 3d 364, 376 (D. Md. 2020) (*citing Hillard v. Kaiser Found. Health Plan of the Mid-Atlantic States*, 169 F. Supp. 2d 416, 418-19 (D. Md. 2001)); *see also Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 547-552 (D. Md. 2001).

In *Walker v. City of Salisbury*, the court dismissed Walker's due process and equal protection claims arising under Section 1983 for failure to state a claim, then declined to exercise its discretion to retain jurisdiction over remaining state law claims. *See Walker*, 170 F. Supp. 2d at 547-552. The court acknowledged the caution advised by the Supreme Court that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by

42

procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial ... the state law claims should be dismissed as well." *Id*. at 551-52. Instead, *Walker* determined, the surviving state law claims "should be presented to a state court." *Id*. at 552; *see also MediGrow*, 487 F. Supp. 3d at 374-76 (after dismissing federal claims, declining to retain jurisdiction over remaining state law claims because they involved novel questions of state law and because the federal interest in resolving those claims was "extremely weak").

If the Court affirms the district court's dismissal of the takings claim—given Plaintiffs' abandonment of their other claims arising under federal law—the federal interest in deciding Individual Plaintiffs' state-law private nuisance claim is low. That claim, if it survives, would be best handled by Maryland state courts, which have developed the applicable legal principles.

The procedural posture of this litigation also favors declining jurisdiction. At the current pre-discovery phase, declining jurisdiction would both save substantial federal court resources that would otherwise be expended through discovery and trial and would exact no prejudice on either party.

### III.  Plaintiffs' Request for Declaratory Judgment was Properly Dismissed Because There Is No Independent Jurisdictional Basis for the Court to Provide the Requested Relief.

Without a valid federal claim, Plaintiffs' request for declaratory judgment must be dismissed because it lacks an independent jurisdictional basis.

43

It is well-established that the federal Declaratory Judgment Act, which Plaintiffs invoke here, provides no independent substantive basis for relief. *See Allen*, 2021 WL 2911736, at \*2-3 (*citing Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014)); *see also Johnson v. Prince George's County Board of Elections*, 2018 WL 1069434 at \*5 (D. Md. Feb. 27, 2018) ("The Declaratory Judgment Act does not provide a basis for an independent claim. Rather, it is an available form of relief, should the court otherwise have a valid cause of action before it.") (*citing Gem Cnty. Mosquito Abatement Dist. v. EPA*, 398 F. Supp. 2d 1, 12 (D.D.C. 2005); *Cohen v. Rosenstein*, 804 F. App'x 194, 196 (4th Cir. 2020) ("Cohen's claim under the Declaratory Judgment Act provides no independent substantive basis for relief." (internal citations omitted)). Indeed, the act "authorizes a federal court to give a declaratory judgment only with respect to *a case of actual controversy within its jurisdiction*." *Prince George's County Board of Elections*, 2018 WL 1069434 at \*5 (emphasis in original). "A request for declaratory relief," therefore, "is barred to the same extent that the claim for substantive relief on which it is based would be barred." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55-56 (4th Cir. 2011).[12]

---

[12] A request for declaratory relief is not "a get-out-of-standing-free card." *Wells v. Johnson*, 2025 WL 2315981, at \*6 (4th Cir. Aug. 12, 2025). While Congress can legislate remedies for courts to afford plaintiffs, "to *use* such a remedy courts still

44

Here, the district court properly dismissed Plaintiffs' substantive federal claims, which necessarily resulted in dismissal of Plaintiffs' declaratory judgment request. *Id* at 56 ("Here, CGM's substantive claims fail. Accordingly, so must its Declaratory Judgments Act claim."); *see also Cumberland Cnty. Hosp. Sys., Inc. v. Burwell,* 816 F.3d 48, 57 (4th Cir. 2016) ("Because we affirm the district court's conclusion that the Hospital System failed to state a claim upon which mandamus relief could be granted, it follows that we must also affirm the district court's dismissal of the Hospital System's declaratory judgment claim."); *Henderson v. Wal-Mart Stores, Inc.*, 2023 WL 166411, at \*4 (4th Cir. Jan. 12, 2023) ("Because Appellant's false imprisonment claim fails on the merits, any associated claim for declaratory relief must fail with it.").

*Johnson v. Prince George's County Board of Elections*, 2018 WL 1069434, is directly on point. In that case, the plaintiffs alleged state and federal claims in federal district court, seeking declaratory relief. *Id.* at \*5. The court dismissed the plaintiffs' federal law claims on standing grounds, holding also that the plaintiffs had failed to state a claim. *Id.* at \*2-3. The court then dismissed the request for declaratory

___

need 'a concrete case admitting of an immediate and definitive determination of the legal rights of the parties.'" *Id*. (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 241 (1937)) (emphasis original).

45

judgment under the federal Declaratory Judgment Act, stating "Plaintiffs lack an independent basis for Article III standing and have failed to state a claim and thus there is no 'actual controversy' for declaratory judgment purposes." *Id*. at *5.

Likewise, in *MediGrow*, the plaintiff brought an eight-count complaint for, *inter alia*, equal protection violations and race discrimination under 42 U.S.C. § 1983 and 42 U.S.C. § 1981, respectively. *See MediGrow*, 487 F. Supp. 3d at 370. As relief, the plaintiff requested a declaratory judgment under the federal Declaratory Judgment Act. *Id*. The district court dismissed the constitutional claims for lack of subject matter jurisdiction because the Commission was shielded by sovereign immunity under the Eleventh Amendment, and ruled that the plaintiff failed to plausibly allege standing for its constitutional claims, even if Eleventh Amendment sovereign immunity did not apply. *Id*. at 374-75. Given dismissal of the substantive claims, the court then dismissed the plaintiff's request for declaratory judgment, explaining that "[t]o take jurisdiction over a declaratory judgment proceeding, the district court must ensure that three 'essentials' are present: (1) the complaint alleges an 'actual controversy' between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Id*. (*citing Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581 (4th

Cir. 2004)). The court reasoned that "having determined that MediGrow's federal claims must be dismissed, there is no longer an independent basis for this Court to assert jurisdiction over this matter." *Id*.

The same is true here. If the district court's dismissal of Plaintiffs' federal takings claim is affirmed, no federal claims remain. With no federal question to consider (and Plaintiffs do not invoke diversity jurisdiction), there is no independent jurisdictional basis for federal courts to consider Plaintiffs' request for declaratory judgment. Therefore, the district court's dismissal of the corresponding count was not only appropriate but required.

## CONCLUSION

For the foregoing reasons, Plaintiffs' baseless claims and bootless arguments should be dismissed, and the district court's decision to dismiss the Complaint in its entirety should be affirmed.

Dated: September 17, 2025

Respectfully submitted,

*/s/ Anthony J. Phillips*

Anthony J. Phillips
Thomas L. Howard III
Jake B. Mitchell
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
tony.phillips@pillsburylaw.com
thomas.howard@pillsburylaw.com
jake.mitchell@pillsburylaw.com

*Counsel for Developer Defendants*

*/s/*

Thomas Webb
Hanna Marie C. Sheehan
BALTIMORE CITY LAW DEPARTMENT
100 Holliday St.
Baltimore, MD 21202
Tom.Webb@baltimorecity.gov
Hanna.Sheehan@baltimorecity.gov

*Counsel for Baltimore Defendants*

48

## ORAL ARGUMENT STATEMENT

Oral argument is appropriate given the importance of the jurisdictional and constitutional issues raised by this appeal. Argument would assist the Court in resolving whether Plaintiffs' takings claim was properly dismissed for lack of Article III standing, or whether prudential standing considerations militate in favor of dismissal on standing grounds, and whether any plausible claims were stated.

## <u>CERTIFICATE OF COMPLIANCE</u>

This principal brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i). This brief contains 10,861 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This motion has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

Dated: September 17, 2025                    */s/Anthony J. Phillips*
                                             Anthony J. Phillips