**CASE NO. 25-1770**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**POPPLETON NOW COMMUNITY ASSOCIATION, INC., ET AL.**

**Plaintiffs/Appellants,**

**v.**

**LA CITE DEVELOPMENT, LLC ET AL.**

**Defendants/Appellees.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND (BALTIMORE DIVISION)**

**APPELLANTS' REPLY BRIEF**

| | |
|---|---|
| **Dated: October 8, 2025** | **SAUL EWING, LLP**<br>**Thomas K. Prevas**<br>**Saul Ewing LLP**<br>**1001 Fleet Street,  9th Floor**<br>**Baltimore, MD 21202**<br>**(410) 332-8683**<br>**thomas.prevas@saul.com** |
| | **Katherine S. Barrett Wiik**<br>**33 South 6th St,**<br>**Minneapolis, MN 55402**<br>**katie.barrettwiik@saul.com** |
| | **Counsel for Appellants *Poppleton Now,***<br>***Inc., Curtis Eaddy Sr. & Sonia Eaddy;***<br>***Sterling Walker & Francina Walker and***<br>***William Gunn & Yvonne Brooks Gunn*** |

**TABLE OF CONTENTS**

**Page**

I.    **INTRODUCTION** ...............................................................................1

II.    **ARGUMENT**......................................................................................3

     1.     *The Individual Appellants Have Standing*...............................*3*

     2.     *Poppleton Now Community Association Has Standing.* .......................*8*

     3.     *The Individual Appellants Have Pleaded a Viable Nuisance Claim* ...............................................................................................*9*

     4.     *Appellants Are Entitled to Declaratory Judgment*............................*11*

IV.    **CONCLUSION** ................................................................................**11**

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Berman v. Parker*, 348 U.S. 26 (1954) ............................................................10

*Ensley v. Cody Res., Inc.*, 171 F.3d 315 (5th Cir.1999) ..............................................8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000) ............................................................................................11

*Kelo v. City of New London*, 545 U.S. 469 (2005) ............................................passim

*Knick v. Township of Scott*, 588 U.S. 180 (2019) ........................................6, 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................passim

*United States v. Windsor*, 570 U.S. 744 (2013) ............................................9

**STATE CASES**

*120 W. Fayette St. LLLP v. Mayor and City Council of Baltimore*, 407 Md. 253 (2009) ............................................................................................14

**FEDERAL STATUTES**

28 USC § 1331 ............................................................................................11

42 USC § 1983 ............................................................................................6

Federal Rule of Civil Procedure 12(b)(6) ............................................13

5th Amendment to the United States Constitution ............................................passim

## I.     INTRODUCTION

Appellants filed a Complaint asking the United States District Court for the District of Maryland to, among other things, declare and affirm that the transaction between the City of Baltimore and the Developer violates the public use clause of the 5th Amendment to the United States Constitution, the United States Supreme Court Case *Kelo v. City of New London*, 545 U.S. 469 (2005), and various Maryland State law provisions.    Appellants' Complaint cites as evidence of the unconstitutional purely private inurement that the Developer now asserts a perpetual "development right" over all the "taken" land, to the point where the Developer believes he controls the outcome of all of the "taken" land and that he must be paid the entire market value for all the taken land if anyone, including the City, wants to do anything with it. Appellants also allege improper actions by City officials and the Developer recently came to light that further render Appellee's transactions unconstitutional and illegal. Appellants assert that these unconstitutional arrangements cause 13.8 acres in the center of their neighborhood and adjacent to their homes to remain a wasteland of emptiness, tall grasses, weeds, trash and illegal dumping, not to mention the rubble from neighbors' homes that were taken and destroyed.   The barrenness and lack of public benefit also materially affect the market value and use and enjoyment of Appellants' homes.

-1-

The United States District Court judge held that Appellants lacked standing to bring the claim under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), more or less adopting the Appellee's lower court brief. The District Court ruled that although adjacent property owners may have standing under Maryland law, Appellants do not have standing by application of the *Lujan* analysis. Appellants' opening brief cites as many as twenty cases spanning almost a century demonstrating that Appellants have standing to challenge this government action because it specially and directly affects them, their property and the experience of the neighborhood in which they live.

Appellees respond by averting the Court's focus away from *Lujan* standing. Initially, Appellees spill considerable ink contesting the allegation of the complaint and concluding that their contract with the city is in the public interest or constitutes a public use. These contested positions go to the merits and have no bearing at this stage. Next, Appellees characterize Appellants' case narrowly as a "takings" claim, reading the "public use" provisions, as interpreted in *Kelo*, out of the 5th Amendment. Appellees then demand that this Court adopt a sweeping rule, without regard to the generally applicable *Lujan* framework, that no person may ever challenge a government action under the property-related provisions of the 5th Amendment unless that person's property, itself, is taken. The case cited by Appellees for this proposition says nothing of the sort. Assuming the truth of their

own position on the merits of the case, Appellees next raise prudential standing, even though this argument was not raised below, is waived, and even if not waived Appellants easily establish prudential standing.

Because Appellees primarily argue the merits and lack support for their legal positions, and for the reasons provided in Appellants' Opening Brief and below, this Court should reverse the order of dismissal and remand with instructions that the lower court render a declaratory judgment on the merits of claims raised by the Appellants in their Complaint.[1]

## II.    ARGUMENT

### 1.    The Individual Appellants Have Standing.

Appellees' focus most of their briefing on the first question presented—whether Appellants' have standing to contest governmental action, including the terms of the LDDA between the City and the Developer.  Appellants allege, among other things, that (i) they are property owners living <u>directly adjacent</u> to the 13.8 Acres of land subject to the LDDA; (ii) the LDDA (or the "Developer Right" component thereof) constitutes a purely private inurement of "taken" property, is otherwise illegal and unenforceable and that the LDDA actually prevents the land from being developed in the public use; (iii) harm to Appellants and their property

---

[1] Notably, Appellees regularly use the words "abandon claims" when characterizing Appellants' positions.  To be clear, in most instances the District Court decided that Appellants lacked standing to bring certain claims in federal courts only.  Appellants reserve the possibility of reviving certain claims if standing is only available to them in Maryland courts.

can be traced directly to the City and Developer's transactions, which include the existence and terms of the LDDA, and (iv) a Court order declaring the LDDA unenforceable or interpreting the "Developer Right" not to exist, would materially benefit the neighborhood by releasing 13.8 acres Developer captivity and remove at least one barrier that is harming the neighborhood in violation of laws.

Appellees agree that *Lujan* applies, but interpret it differently. Appellees argue that the centuries' worth of standing law—cited in both *Lujan* and in cases interpreting *Lujan*—should be replaced with a bright line rule that a person never can make a taking/public use claim to challenge a government action alleged to be improper under the 5th Amendment unless their property is actually taken.

Although Appellants cite up to twenty United States Supreme Court and federal circuit cases in support of their standing under the *Lujan* analysis, Appellees dismiss this authority by claiming that all of these cases involved a cause of action established by statute. This argument misses the mark entirely. To take the easiest example noted by Appellees, the Clean Water Act contains a statutory citizens suit provision allowing parties to contest the government's enforcement (or lack thereof) of water quality standards. Nevertheless, a person cannot bring a claim under the Clean Water Act citizen suit provision unless they establish *standing*, and the rules for establishing standing are universal.

-4-

The *Lujan* standing analysis is the same both there and here. Irrespective of what is being challenged the _standing_ analysis remains the largely the same and often boils down to whether the plaintiff an interest that is special or different than the general public. *Lujan* still applies, and *Lujan* establishes Appellants' standing.

Appellees next argue that *Lujan* does not apply because only a person whose property is taken may assert a 5th Amendment challenge. No federal court ever has sanctioned applying a different standing rule to every different cause of action. In loose support of this proposed rule, Appellees cite *Knick v. Township of Scott*, 588 U.S. 180 (2019). In *Knick*, a township passed an ordinance requiring that all cemeteries be open during daylight hours, and the property owner brought a takings claim in federal court. When holding that a takings claim could be brought directly in federal court without exhausting a state-court challenge first, the Supreme Court discussed when a taking claim by a property owner could be brought. Appellees quote the Supreme Court's language discussing this principle as if the Supreme Court had held that a taking claim can only be brought by a property owner—a topic never addressed in *Knick*. The facts of Knick are incongruous with the allegations here.

Almost as an afterthought, Appellees raise new, non-*Lujan*, subject matter challenges, including prudential considerations and whether a federal question is presented. These challenges were neither briefed below nor addressed by the trial

judge and should be deemed waived. Although Article III standing cannot be waived, prudential standing is not jurisdictional and can be waived. *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) (holding a defendant waived a challenge to prudential standing by objecting "too late," after the plaintiff's case-in-chief). Even if prudential standing is not waived, it does not apply here because Appellants easily establish prudential standing as well. *See Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 938–39 (8th Cir. 2013) (acknowledging that prudential standing was likely waived but, given a circuit split on the issue, choosing not to rule on this basis because Appellants' easily established prudential standing anyway).

Appellants have prudential standing. In support of their position, Appellees paradoxically cite to *United States v. Windsor*, 570 U.S. 744, 757 (2013), in which the Supreme Court <u>rejected</u> a prudential standing argument and invalidated the Defense of Marriage Act as unconstitutional <u>despite</u> the "friendly, non-adversary" nature of the dispute. *Id.* at 759-60. In stark contrast to that case, this case is anything but a "friendly, non-adversary, proceeding;" the Appellants have suffered real harm at the hands of the Appellees and their unconstitutional and illegal actions. Such grievances are not "abstract questions" of public policy. They seek to redress concrete harms that they have experienced—and continue to experience—in their daily lives, including every morning when they walk out the front door.

Appellees' reliance on *Berman v. Parker*, 348 U.S. 26, 36 (1954) only further undercuts their contention, in two ways. First, in *Berman*, the doctrine of standing was never even at issue: the Court proceeded directly to the merits of the takings claim. Second, *Berman* did not involve a secret in-kind gift at the time of the RFP or a resultant wholly private inurement or "developer right," involving the perpetual encumberment of all of the taken land without performance. *See id.* at 33-34. *Kelo* placed limits on *Berman* and other community development cases preceding it, ruling that facts and circumstances must be weighed to determine whether a "taking" transaction involving the government and a private entity exists within the allowable limits of the 5thh Amendment. Under a post-*Kelo* framework and applying Justice Kennedy's controlling opinion, the allegations of improper influence, private inurement and violations of State laws present the paradigm case which Justice Kennedy warned about, meriting scrutiny on the merits. Although it is not surprising that Appellees challenge many of the allegations on the merits, their arguments that the transactions are legal does not deprive the Court, or the Appellants, of subject matter jurisdiction or prudential standing.

Appellants argue that the actions of Baltimore and this developer go beyond that which is permitted under *Kelo*, the 5th Amendment and Maryland law. In so arguing, Appellants raise a definitive case or controversy involving the special and particularized interest of the individual Appellants, which is capable of judicial

review and declaratory determination by federal courts.  Appellants' contentions squarely involve a "federal question" conferring jurisdiction under 28 USC § 1331.

### 2.    Poppleton Now Community Association Has Standing.

An association has standing "to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181, (2000).

Appellees do not address community association standing in any detail, presumably assuming that if the individuals do not have standing, the community association does not either.  Although this assumption applies in many other cases involving associational standing, it does not apply here.  Here, the Complaint expressly alleges that persons whose homes were taken are among the members of the Poppleton Now Community Association.  Accordingly, even if Appellees were to prevail on their argument that standing requires that a members' property be taken, Poppleton Now still has associational standing to bring this case.  The District Court Order of dismissal must be reversed as to Poppleton Now.

**3.      The Individual Appellants Have Pleaded a Viable Nuisance Claim**

The Court should reverse the dismissal of Appellants' nuisance claim. The Individual Plaintiffs alleged that the contract between the City has caused a 13.8 hole in their neighborhood and the lack of use, occupancy and care has caused, and will continue to cause, a nuisance that harms Appellants. The Complaint explains that the land sits empty and fallow, which has resulted in the accumulation of trash, weeds, rats, illegal dumping and other harms typical of land that is unoccupied, undevelopable (due to the LDDA) and uncared-for in an urban environment. JA039, ¶98. The Individual Appellants have pleaded that living adjacent to these conditions causes them to lose use and enjoyment and property value. JA039, ¶98.

These allegations are more than sufficient to plausibly allege a nuisance claim under Maryland law. The District Court's Order misstates Maryland nuisance law and fails to apply the correct standard of review when determining that Appellants have failed to plead nuisance. Maryland nuisance law allows recovery for nuisance even when a physical use of the property has not been directly impaired, and determinations about the significance or reasonableness of Appellants' alleged loss of use and enjoyment or loss of property value require an evaluation of evidence that cannot be decided solely on the pleadings. Accordingly, this Court should reverse the District Court's dismissal of the nuisance claims under Federal Rule of Civil Procedure 12(b)(6).

Appellees' discussion of nuisance fails to raise any arguments not substantially addressed in the District Court's Order of dismissal or in Appellants' opening brief. Once again, Appellees continue to argue the merits, such as that the LDDA is "good" for the neighborhood or that the nuisance conditions are "not that bad," "not reasonable," or "insubstantial." While a trier of fact could choose to agree with Appellees on these arguments, it is not appropriate for a Court to make these determinations at a motion to dismiss stage. Additionally, as to the nuisance claim, Appellants' not only claim that the LDDA creates the nuisance, but also that the City and the Developer have left 13.8 acres in the center of their neighborhood in utter disrepair and that this causes them to lose use and enjoyment and property value. Appellants have pled a viable case of nuisance under Maryland law.

Appellants agree that if the Court affirms the dismissal of all federal questions and only the nuisance count remains, remand to Maryland State Courts could be appropriate. Nonetheless, if this were to occur Appellants would re-assert their constitutional claim in state court because the Maryland Supreme Court case *120 W. Fayette St. LLLP v. Mayor and City Council of Baltimore*, 407 Md. 253 (2009) directly holds that an adjacent property owner has standing to challenge the legality of an LDDA contract between the City and a developer. Appellants, however, refuse to believe that federal and state court standing analyses are wildly different and

-10-

believe the federal courts are best equipped to decide their United States 5th Amendment-focused claims.

### 4. Appellants Are Entitled to Declaratory Judgment

Appellants and Appellees agree that standing is a prerequisite to declaratory judgment. Nonetheless, if this Court agrees that Appellants have standing, the remand to the District Court should be accompanied with instructions to render a declaratory judgment on the merits of Appellant's Complaint.

## III. CONCLUSION

Appellants respectfully request that this Court reverse the District Court's order dismissing the case and remand the case to the District Court for proceedings consistent with this appeal. In the alternative, Appellants minimally should be afforded an opportunity to amend their Complaint.

Dated: October 8, 2025          /s/ Thomas K. Prevas

SAUL EWING, LLP
Thomas K. Prevas
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
(410) 332-8683
thomas.prevas @saul.com

Katherine S. Barret Wiik
33 South 6th St, Minneapolis, MN 55402
katie.barrettwiik@saul.com

*Counsel for Appellants Poppleton Now, Curtis Eaddy Sr. & Sonia Eaddy; Sterling Walker & Francina Walker and William Gunn & Yvonne Brooks Gunn*

-11-

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) because it contains less than 3,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

*/s/ Thomas K. Prevas*
Thomas K. Prevas

-12-

## CERTIFICATE OF SERVICE

I CERTIFY that on October 9, 2025, the Reply Brief of Appellant was

served on all parties or their counsel of record through the CM/ECF system.

*/s/ Thomas K. Prevas*
Thomas K. Prevas
